826 P.2d 344

**The STATE of Arizona, Appellee,**

v.

**Frank Arnold SMITH, Appellant.**

**No. 2 CA–CR 91–0266.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 13, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Linda L. Knowles, Phoenix, for appellee.

William Lakosil, P.C. by William Lakosil, Sierra Vista, for appellant.

**482**

## OPINION

LIVERMORE, Chief Judge.

Appellant and a codefendant were indicted on charges of armed robbery, aggravated robbery, first-degree burglary, third-degree burglary, and kidnapping. The state also filed an allegation of one prior dangerous nature conviction. Following a jury trial, appellant was convicted as charged and the jury found the allegation of prior conviction to be true. Appellant was sentenced to maximum, concurrent terms of imprisonment, the longest of which was 28 years.

The charges arose out of a robbery of a convenience store in Sierra Vista on October 30, 1990. At approximately 9:12 p.m., the clerk was conducting a cigarette inventory when he heard someone coming into the store. As he walked out of the cigarette closet, he was confronted by a man who pointed a gun in his face and motioned him to the cash register to remove its contents. A second man appeared and ordered anyone there to come out. The clerk told the gunman that no one else was in the store. The gunman again pointed the gun at the clerk and demanded all the money. The second man approached carrying two four-packs of beer and the two left. A customer arriving at the store witnessed the two running into an adjacent trailer park.

The two men were wearing shirts with long sleeves, fastened to the top, and caps, goggles, and bandanas, so that the clerk was unable to identify them. However, a footprint matching the sole of the codefendant's shoe was found on the cigarette inventory folder which the clerk apparently dropped when the robbery began.

Appellant and the codefendant had been staying in the trailer park in a trailer belonging to Troy Weaver. Shortly after the robbery, the police put the trailer under surveillance because of prior suspicions of criminal activity involving the codefendants. A young woman and man subsequently arrived at the trailer and agreed to give the codefendants a ride to the Vista Inn at around 11 p.m. After the codefendants left the trailer, an officer interviewed Weaver who told him that the two had gone out for beer between 8:00 and 9:00 and returned out of breath between 9:30 and 10:00. They closed the curtains and appeared to be very concerned about the presence of police. They also had money, which Weaver didn't believe they had had before, and when questioned about it, appellant told Weaver that they had just robbed the convenience store. A witness for the codefendants, a waitress at another bar, testified that the two were in her bar from around 8:30 until the bar closed at around midnight. The codefendants were arrested at the Vista Inn at around 1:30 a.m.

■ Appellant raises two issues on appeal. He first contends that the trial court committed reversible error in granting the state's request that the codefendants be required to display tattoos on their arms to the jury. The state argued that the display was relevant to explain why the codefendants went to great lengths to cover their bodies during the robbery, that is, so that any witness would not be able to identify them based on their numerous and distinctive tattoos. Although there are no pictures in the record, it appears from the trial court's description at the hearing on the state's motion that they were extensive. The trial court concluded after examination that none of the tattoos was either inflammatory or prejudicial. In granting the motion, however, the court also ordered that the examination take place at such a distance that the jury could not read anything in the tattoos.

■ Appellant argues that the tattoos were not probative and that they were prejudicial. We disagree with both contentions. The evidence was relevant to identity in that it explained why the robbers were so careful to cover their arms and torsos. Appellant has also failed to demonstrate how the evidence was prejudicial. The mere fact that a defendant has tattoos is not inherently prejudicial, and there has been no showing in this case as to the content of the tattoos, much less whether they might give rise to prejudicial associa-

tions in the minds of the jurors. *Cf. State v. Ballantyne,* 128 Ariz. 68, 623 P.2d 857 (App.1981). We find no error in the trial court's ruling.

Appellant next contends that the trial court abused its discretion in refusing to permit the codefendants to impeach Troy Weaver with evidence of his conviction by court martial for false swearing, obstruction of justice, and conspiracy to obstruct justice. Weaver was found guilty of the charges and sentenced in a general court martial shortly before the trial in this case. The state did not dispute the findings of the general court martial or the fact that Weaver had been sentenced to three years' hard labor. Because the findings of the court martial had not yet been reviewed and approved by the convening authority, however, *see* 10 U.S.C. § 864, the state argued that the conviction was not final for purposes of Ariz.R.Evid. 609, 17A A.R.S. The trial court agreed and precluded the impeachment.

Whether the conviction was final under military law was a question of law for the trial court to decide. *Cf. State v. Smith,* 126 Ariz. 534, 617 P.2d 42 (App. 1980). The Federal Rules of Evidence were adopted for military court proceedings in 1980. Exec. Order No. 12198, 45 Fed.Reg. 16932 (1980). *See generally* J. Weinstein & M. Berger, 3 Weinstein's Evidence ¶ 609[13] (1991). Rule 609(f) of the rules as modified for military courts provides that "[f]or purposes of this rule, there is a 'conviction' in a court-martial case when a sentence has been adjudged." *See also United States v. Lachapelle,* 10 M.J. 511 (1980). Thus, the trial court erred in concluding that Weaver's conviction was not final and therefore precluding its admission for purposes of impeachment.

We believe the error requires reversal of appellant's convictions. As noted above, the clerk could not identify the robbers, and the only physical evidence in the case connected appellant's codefendant to the robbery but not appellant. Weaver's testimony not only placed appellant, out of breath and nervous, back at the trailer shortly after the robbery, but also included appellant's statement to him that they had just robbed the convenience market. Absent this testimony, the evidence against appellant was not overwhelming. Because we find that Weaver's credibility was central to the case, *see State v. Rendon,* 148 Ariz. 524, 715 P.2d 777 (App.1986), the trial court's error in precluding impeachment with the court martial conviction requires reversal of appellant's conviction.

Reversed and remanded.

LACAGNINA, P.J., and HOWARD, J., concur.