478 S.E.2d 563

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Scotty Gene PHELPS, Defendant Below, Appellant.**

**No. 23254.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1996.

Decided Oct. 11, 1996.

Scott E. Johnson, Assistant Attorney General, Charleston, for Appellee.

Travers R. Harrington, Jr., Jesser & Harrington, Fayetteville, for Appellant.

PER CURIAM:

This is an appeal by the appellant herein and defendant below, Scotty Gene Phelps, from his conviction of first degree murder and sentence to life imprisonment without possibility of parole. The defendant was convicted by a jury in the Circuit Court of Fayette County on December 13, 1994. The defendant has assigned as error the following: (1) the admission of testimony of other outstanding charges against him; (2) the failure to give the Defendant's Jury Instructions Nos. 3 and 4; (3) the admission of testimony of conversations the police had with others not present at trial; (4) the failure to allow the defendant to cover up tattoos on his hands; (5) the admission of certain physical evidence; (6) the failure to appoint a co-counsel; and (7) the failure to bifurcate the trial and sentencing proceeding. The defendant further asserts that the cumulative effect of these errors requires reversal of the conviction and sentence.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case are entangled in the relationship the defendant had with Kathy Agent. In June of 1993, the defendant and Ms. Agent were living together in Oak Hill, West Virginia. At that time, the defendant had outstanding arrest warrants against him for kidnapping, sexual assault, and malicious wounding. The record indicates that law enforcement officials attempted on four occasions to arrest the defendant on the outstanding charges but to no avail. On June 12, 1993, the defendant and Ms. Agent concocted a plan that would get him a car so he could escape arrest for the charges pending against him. The plan called for Ms. Agent to hitchhike along the road and lure a motorist back to her home, where the defendant would be waiting to ambush the unsuspecting motorist. At about 2:00 p.m. on June 12, Ms. Agent left her home to carry out her part of the plan. Not long after Ms. Agent began hitchhiking, she was picked up by John T. Moran, a Pennsylvania resident who was on his way to a computer convention in North Carolina. Ms. Agent convinced Mr. Moran to drive her home so they could "party." Prior to reaching Ms. Agent's home, Mr. Moran stopped at a store and purchased a bottle of vodka, a pack of cigarettes, and a package of condoms. Mr. Moran arrived at Ms. Agent's home at about 4:00 p.m. Within a short time, Mr. Moran and Ms. Agent were sitting on her couch drinking and talking about sex. While this was taking place, the defendant was hiding in the bedroom. Eventually Mr. Moran and Ms. Agent found their way into her bedroom. As Mr. Moran and Ms. Agent were on her bed, the defendant stealthily approached them carrying a knife. The defendant pinned Mr. Moran to the bed and began stabbing him.[1] While stabbing Mr. Moran, the defendant began laughing and said: "He's almost dead." There was testimony that after repeatedly stabbing Mr. Moran, the defendant then dragged Ms. Agent through his blood. The defendant then placed Ms. Agent's face next to Mr. Moran's face and said: "I want to show you what death looks like, and I don't want you to forget it."

---

1. Dr. Irwin Sopher, the State's Chief Medical Examiner, testified that Mr. Moran was stabbed at least thirteen times.

The defendant eventually wrapped Mr. Moran's body in a blue tarp and two blankets. Mr. Moran's body was then placed in the trunk of his car. Ms. Agent testified the defendant threatened her with a hammer if she did not accompany him out of the State. Ms. Agent consented after being threatened. The record indicates that Ms. Agent drove Mr. Moran's car, while the defendant sat in the passenger's side, to an area called Garden Ground and disposed of the body. Ms. Agent testified that the blankets and the tarp were removed from the body and an old refrigerator was thrown on top of Mr. Moran's corpse. The blankets and tarp were eventually thrown off a bridge into a river, as the defendant and Ms. Agent drove Mr. Moran's car to Florida.

An investigation into Mr. Moran's whereabouts was launched after his family members alerted authorities they believed he was missing. The investigation eventually led authorities to Florida where they arrested the defendant and Ms. Agent. Authorities were able to find Mr. Moran's body after Ms. Agent informed them where it was dumped. After extradition back to West Virginia, Ms. Agent and the defendant were indicted for first degree murder and aggravated robbery. Ms. Agent entered a plea of guilty to first degree murder, with mercy, and agreed to testify against the defendant. The defendant was tried on the first degree murder charge and found guilty of the same by a jury. The jury did not recommend mercy. The trial court sentenced the defendant to life without possibility of parole. The defendant appeals his conviction and sentence on the grounds that the trial court committed error in: (1) admitting testimony of other outstanding charges against him; (2) failing to give Defendant's Instructions Nos. 3 and 4; (3) admitting testimony of conversations the police had with others not present at trial; (4) failing to allow the defendant to cover up tattoos on his hands; (5) admitting certain physical evidence; (6) failing to appoint a co-counsel; and (7) failing to bifurcate the trial

and sentencing proceedings. He further contends that the cumulative effect of these errors requires a reversal of the conviction and sentence.

## II.

## ADMISSION OF PRIOR CHARGES

██ The defendant's first argument is that the trial court committed error in denying his pretrial motion to preclude witnesses from giving testimony that he had prior charges pending against him at the time Mr. Moran was killed. We note at the outset that "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." Syl. Pt. 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983). *See also,* Syl. Pt. 4, *State v. Farmer*, 185 W.Va. 232, 406 S.E.2d 458 (1991) (per curiam). In other words, the defendant has a tall leap to make in order to have this Court disturb an evidentiary admissibility ruling. The rule applicable to the issue raised by the defendant is Rule 404(b) of the West Virginia Rules of Evidence.[2] This Court observed in *State v. Nelson*, 189 W.Va. 778, 784, 434 S.E.2d 697, 703 (1993), that Rule 404(b) was an " ' "inclusive rule" in which all relevant evidence involving other crimes or acts is admitted at trial unless the sole purpose for the admission is to show criminal disposition.' " *Quoting State v. Edward Charles L.*, 183 W.Va. 641, 647, 398 S.E.2d 123, 129 (1990). More recently we provided further guidance on Rule 404(b) evidence. In Syllabus Point 1 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), we held:

"When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is

---

**2.** Rule 404(b) of the Rules of Evidence provides, in relevant part:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in con-

formity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]"

not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction."

We stated further in Syllabus Point 2 of *McGinnis:*

"Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence."

■ *McGinnis* instructs us that six steps should be engaged in by a trial court in making a Rule 404(b) evidence ruling: (1) a hearing must be held outside the presence of the jury; (2) the State must identify a specific purpose for which the evidence will be used; (3) the trial court must be satisfied by a preponderance of the evidence that the act

or conduct occurred and that the defendant committed the same; (4) the trial court must determine that the evidence is relevant; (5) the trial court must perform the Rule 403 balancing test; and (6) the trial court should instruct the jury on the narrow purpose of the evidence. The defendant contends that *McGinnis* was not complied with during his trial, in that the trial court failed to perform the balancing test requirement and failed to make a preponderance of the evidence finding. During the pretrial hearing on the defendant's motion to preclude evidence of prior pending charges, the following exchange between counsel and the trial court occurred:

"[PROSECUTOR]: The—as the Court is probably aware from past proceedings in this matter, the—the charges pending against Mr.—Mr. Phelps at the time Mr. Moran was murdered form the—part of the State's case as it relates to motive.

"The evidence in this case is going to be that at the time that Mr. Moran was lured to his death, that Mr.—Mr. Phelps was a fugitive from justice on certain charges that had been brought against him. The police, at the time of Mr. Moran's death, were actively seeking Mr. Phelps and had warrants for his arrest.

"The evidence in this case indicates that that was the motive—or one of the prime motives for Mr. Phelps wanting out of the state of West Virginia.

And, although—and that—that charge against him relates to the Elizabeth Milam case where—which is the other indictment in this case that—that—whereby it is alleged that he took this young lady to a—to this home where Mr. Moran was ultimately murdered—took this young lady to that home, did unspeakable atrocities to her body and then released her at some point, and that he was seeking to evade the police and to—to leave the state of West Virginia, to keep from facing those charges.

"Now, I certainly realize the obligation on the State to set a tone of fairness toward this defendant, and I don't want to try the Elizabeth Milam case. Although it would be very prejudicial to this—to this defendant, I realize that that prejudicial

effect greatly outweighs the probative value of that case.

"But, nevertheless, I think it is important to show motive for this defendant, to show that he was wanted in connection with that case, without going into actual facts and circumstances of that case, which—

"THE COURT: Simply that there were pending in Fayette County, felony charges for this defendant.

"[PROSECUTOR]: That's correct. And he was being actively sought. I think that Deputy Burke and others are going to testify that—that on—that they had made several attempts to try to locate Mr. Phelps, either here in Fayette County or in Raleigh County in connection with this warrant, and had been unsuccessful.

"[DEFENSE]: That's exactly the type of evidence I'm trying to exclude from this trial.

"THE COURT: Well, I think the State is entitled to make an effort to try to show motive in regard to the theft of the car and the murder of Moran, and I would allow the State to present evidence that there was, at the time of these alleged incidents, pending in Fayette County one or more felony warrants against Phelps, but I'm not going to let them get into all the—as the prosecutor describes them, "unspeakable" details, whatever they might be.

"I certainly wouldn't permit him to do that, but it's sufficient for them to show and to say simply that—by competent evidence that those charges were pending."

As an initial matter, we take note of the fact that the State sought to establish as the motive in this case that the defendant murdered Mr. Moran for the purpose of taking his car to flee arrest for the crimes of sexual assault, malicious wounding, and kidnapping.[3] Next, the State takes the position that the trial court did in fact perform a balancing test, based, in part, on its agreement with statements by the prosecutor. Additionally, the State argues the trial court balanced the propriety of allowing testimony regarding the underlying facts of the prior charges as opposed to merely allowing testimony that the defendant was actively being sought by authorities for other felony charges and concluded that the former was too prejudicial but the probative value of the latter was not outweighed by its prejudicial effect. We agree with the State's position. It is clear to us that the trial court, perhaps not in an ideal manner, complied with the balancing requirement of *McGinnis*.

The State also contends that a preponderance of the evidence finding "is not a required finding under Rule 404(b) when outstanding warrants are the issue for the jury to consider in establishing motive." In support of its position, the State cites *State v. Smith*, 868 S.W.2d 561, 577 (Tenn.1993), *cert.*

---

3. We also note that the hearing on the motion was held outside the presence of the jury and the trial court found the evidence to be relevant. The State's brief points out that the defendant did not request a limiting instruction be given to the jury during the trial and none was given *sua sponte* by the trial court. However, the State notes that the trial court included in its jury instructions the following: "You are here to determine the guilt or innocence of this defendant from evidence in this case. This defendant is not on trial for any act or conduct or crimes not charged in the indictment." Ideally, we prefer that trial courts give limiting instructions on Rule 404(b) evidence contemporaneously with the admission of such evidence at the trial. However, in the absence of a request for the same by a defendant, we do not disapprove of such an instruction being given in the first instance during the trial court's general charge to the jury. The defendant noted in his brief that the trial could should have given a limiting instruction on the Rule 404(b) evidence like that proffered in his Instruction No. 2, which stated: "The Court instructs the jury that evidence of other offenses that the defendant may have been involved with should not be considered as proof that he committed or is guilty of the murder as charged in Fayette County." The State notes that the trial court rejected Defendant's Instruction No. 2 on the grounds that the issue was already covered in the trial court's instructions. Further, the State notes that the trial court asked the defendant to "please speak up" if he had anything to say regarding the rejection of Instruction No. 2, but the defendant responded: "Well, I just wanted to offer these." The State argues that any error in rejecting Instruction No. 2 was waived for appellate review purposes by the defendant's silence. The issue of waiver on Instruction No. 2 need not be decided by this Court because the defendant did not assign as error the failure to give Instruction No. 2.

*denied,* —— U.S. ——, 115 S.Ct. 417, 130 L.Ed.2d 333 (1994), wherein the Tennessee Supreme Court held:

"[T]he defendant argues that this proof [of warrants] should not have been admitted because the prior crimes were not established by 'clear and convincing evidence' under the guidelines of *State v. Parton,* 694 S.W.2d 299 (Tenn.1985). Strictly speaking, the evidence of which Defendant complains is not 'other crimes evidence' as discussed in *Parton.* The relevant fact was that the charges were pending, and exposed the Defendant, who knew of them, to possible prosecution and punishment regardless of their validity. Proof establishing the charges' truthfulness might have been relevant to increase the strength of the State's theory that avoiding prosecution and conviction was the Defendant's motive but was unnecessary to establish the admissibility of the outstanding warrants."

We express no opinion on the merits of the position taken by the court in *Smith.* We pause briefly to point out that at issue in *Smith* was the standard of "clear and convincing evidence" and the admissibility of outstanding warrants. In the instant case, the matter at issue is the preponderance of the evidence standard and evidence that charges were pending against the defendant, not the introduction of the actual outstanding warrants. The evidence proffered by the State at the pretrial hearing, and the evidence that was given at the trial, was testimony by witnesses that the defendant was being sought in connection with pending charges. A review of the record in this case indicates the defendant did not challenge, during the pretrial hearing, the assertion that authorities were looking to arrest him prior to Mr. Moran's death. In fact, the evidence shows the defendant conceded this issue and was merely attempting to prevent introduction of this uncontested fact. The record also informs us that the defendant did not challenge at the pretrial hearing the allegation that he was evading arrest by authorities prior to Mr. Moran's murder. We believe that based upon all the arguments at the pretrial hearing, there was a sufficient basis for the trial court to find by a preponderance of the evidence that the crimes of kidnapping, sexual assault, and malicious wounding occurred and that the defendant committed the same.

## III.

### JURY INSTRUCTIONS

■ The second assignment of error by the defendant involves the trial court's denial of Defendant's Instruction Nos. 3 and No.4. We recently pointed out in *State v. Guthrie,* 194 W.Va. 657, 671, 461 S.E.2d 163, 177 (1995), that "when an objection to a jury instruction involves the trial court's expression and formulation of the jury charge, this Court will review [the matter] under an abuse of discretion standard." We have held that "[i]nstructions that are repetitious or are not supported by the evidence should not be given to the jury by the trial court." Syl. Pt 5. *State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990). *See* Syl. Pt. 7, *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40 (1976); Syl. Pt. 6, *State v. Meadows,* 172 W.Va. 247, 304 S.E.2d 831 (1983).

■ Defendant's Instruction No. 3 stated: "The Court instructs the jury that the testimony of Kathy Agent must be received with great care and caution, and if you believe the testimony of her as an alleged accomplice was false, and that she was induced to testify falsely either by fear of punishment or hope of reward, you must disregard that testimony in its entirety." The trial court rejected this instruction on the grounds that it was covered in the trial court's charge.[4] The State

---

4. The trial court's charge stated:
   "The testimony of an accomplice is admissible in evidence, yet in considering such testimony as to matters connecting the defendant with the commission of the crime which are not supported by other evidence or circumstances, you should examine such testimony with great care and caution in determining what weight to give such testimony.

   "You may, however, find the defendant guilty on the evidence of an accomplice standing alone and not supported by any other evidence if you are convinced beyond a reasonable doubt by such evidence of the defendant's guilt."

argues the defendant waived any objections he had to the trial court's ruling on Defendant's Instruction No. 3 because the trial court asked the defendant to "please speak up" if he had anything to say regarding the rejection of the instruction, but the defendant offered nothing in response. We need not decide whether a waiver occurred based upon a lack of response by the defendant to the trial court's question. This issue is decided against the defendant because we are not persuaded that the trial court abused its discretion in rejecting Defendant's Instruction No. 3 on the grounds that the matter was covered in the trial court's charge. We believe the trial court's charge fully covered the area of concern expressed in Defendant's Instruction No. 3.

■■■■ The next issue involves the trial court's rejection of Defendant's Instruction No. 4. In Syllabus Point 12 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), we stated: "Whether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard. In criminal cases where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution." Defendant's Instruction No. 4 provided: "The Court instructs the jury that if you believe from the evidence that Kathy Agent

took the life of John Moran as charged in the indictment, and that Scott Phelps was not present at the time of the killing of John Moran, and did not aid therein, but that Scott Phelps did aid and abet Kathy Agent in the suppression or concealment of the fact of the killing of John Moran then the jury should find Scott Phelps not guilty as charged in the indictment." The primary argument urged by the State[5] is that the trial court rejected Defendant's Instruction No. 4 on the grounds that no evidence was presented which warranted the instruction.[6] Our review of the record in this matter supports the State's position. In fact, when the defendant proffered Instruction No. 4, he conceded that not a scintilla of evidence was *introduced on the issue urged in the instruction.* The trial court did not abuse its discretion in denying this instruction.

## IV.

### HEARSAY TESTIMONY

■■■■ The defendant's third assignment of error is that the trial court should have sustained his objections to testimony by three law enforcement agents as hearsay.[7] This Court has held that "[t]he hearsay rule excludes such testimony only when offered 'as evidence of the truth of the matter asserted'; and does not operate against such testi-

---

**5.** The State also argues this issue was not properly presented for appellate review in the defendant's brief. The State correctly points out that the defendant merely mentions that Instruction No. 4 was not accepted, without more. This Court noted in *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996): "Although we liberally construe briefs in determining issues presented for review, issues which are ... mentioned only in passing but are not supported by pertinent authority, are not considered on appeal." *See also State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal") (Citation omitted).

**6.** The following exchange occurred concerning Defendant's Instruction No. 4:

"[PROSECUTOR]: Well, but there's no—the evidence in this case doesn't show he was an accessory after the fact. There's no evidence in this case that he came upon the scene after the fact. He was—

"[DEFENSE]: There's actually no evidence in this case that he came upon the scene during the fact either, except Kathy Agent—
"THE COURT: Well, that's evidence. I'm going to refuse Defendant's No. 4."

**7.** The defendant objected twice, on hearsay grounds, to testimony by Mark Sykes of the Federal Bureau of Investigation. The trial court overruled the objections as testimony involving matters Agent Sykes uncovered during his investigation. The defendant also objected twice on hearsay grounds to testimony by Matthew Jeffries of the Beckley Police Department. The trial court overruled both objections as also concerning matters uncovered by Officer Jeffries during his investigation. The defendant also objected to the introduction into evidence of bills from the Hilton Hotel in Florida and the testimony of Lieutenant John Mowen of the Daytona Beach Police Department regarding the same. The trial court overruled the objections on the grounds that the bills and testimony regarding the same where matters uncovered by Lieutenant Mowen during his investigation.

mony offered for the mere purpose of explaining previous conduct." *Maynard*, 183 W.Va. at 4, 393 S.E.2d at 224. (Citations omitted). Each proffered testimony objected to involved matters the officers learned during the course of the investigation of Mr. Moran's death. This testimony in each instance was offered merely to "explain previous conduct" by the officers in carrying out their investigations. The State argues the testimony by the officers was not hearsay in that the testimony was not presented to prove the truth of the matter asserted. We agree with the State that this evidence was not hearsay. However, "[t]he receipt of this type evidence should be determined under principles of relevancy pursuant to Rules 401–403." 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–1(A)(5) (3rd ed.1994). We addressed this issue in *Maynard*. In that case, the prosecution maintained that testimony by police officers that they received an anonymous phone call that identified the defendant as a suspect, which led them to place his photograph in a photo array, was not hearsay. We agreed with the prosecutor in *Maynard* that the reason for the introduction of the testimony was not for the truth of the matter asserted, but was instead to explain why the police included the defendant's photo in a photo array that was shown to the robbery witness. We went further, however, and found that the question of why the defendant became a suspect was not an issue in the case. "Therefore, since the issue was not relevant to the prosecution, nor the defense, it was error to allow [the police officers] to testify about the anonymous phone call which implicated the defendant." 183 W.Va. at 5, 393 S.E.2d at 225. We did not end our analysis in *Maynard* upon making the determination that it was error to admit the officers' testimony regarding the anonymous phone call. We went further:

"West Virginia Rule of Criminal Procedure 52(a), however, provides that '[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.' In interpreting this rule, we have previously held in Syl. Pt. 6, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987) that:

" 'Where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must be made to determine whether the error had any prejudicial effect on the jury.'

"In *Smith*, this Court found that a hearsay statement made by the victim of a crime was inadmissible hearsay and improperly admitted. We concluded that no reversible error had been committed by the admission of this hearsay at trial, however.

"Similarly, in the present case, we find no reversible error....

"Therefore, although error was committed by the lower court in allowing the officers' testimony regarding the anonymous phone caller and her implication of the defendant in the robbery, we conclude that the error was harmless error." 183 W.Va. at 5–6, 393 S.E.2d at 225–26.

*Maynard* instructs us that in the instant matter we must determine whether the officers' testimony was relevant and, if not, did introduction of the testimony amount to harmless error. A review of the defendant's two objections to testimony from Agent Mark Sykes of the Federal Bureau of Investigation indicates that this testimony was relevant, as it related to how authorities were able to track a call made from Florida on Mr. Moran's telephone credit card, after he was killed, and how this information lead authorities to Florida where the defendant was located. The defendant also objected twice to testimony by Officer Matthew Jeffries of the Beckley Police Department. The testimony objected to involved communication by authorities with Norma Warwick, the

person who received the telephone call in West Virginia that was made from Florida on Mr. Moran's telephone credit card, and information by Ms. Warwick that Kathy Agent made the call to her and also indicated that the defendant was in Florida with her. We find this testimony was also relevant. The defendant objected next to testimony by Lieutenant John Mowen of the Daytona Beach Police Department regarding communication that lead to the identification in Florida of Kathy Agent and introduction into evidence of credit card bills that were signed by Kathy Agent. The relevancy of the latter testimony and accompanying exhibit present a close call. Assuming the evidence was not relevant, we have no doubt that its introduction was harmless error. The sum total of the State's evidence against the defendant, after extracting the assumed erroneously admitted evidence, was clearly sufficient for the jury to find the defendant guilty beyond a reasonable doubt. We also do not find that the assumed erroneously admitted evidence affected the jury's decision in this case. In fact, the only effect this evidence might have had in this case was that of causing the jury to be cautious about the testimony eventually proffered by Kathy Agent, which, of course, would have benefited the defendant.

## V.

## TATTOOS

■ The defendant's next assignment of error is that the trial court committed error in denying his pretrial motion to allow him to place bandages on tattoos that were on the back of his hands.[8] The tattoos contained words such as "Grim Reaper" and "devil."

The defendant contends that he had a right under *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979), to have his tattoos covered. The defendant misconstrues *Estelle* and *Brewster*. Neither case addresses the issue of tattoos on a defendant's hands. Those cases address a defendant's right not to be forced to wear identifiable prison garb at his trial and the right to be free of unnecessary physical constraints at trial. "The mere fact that a defendant has tattoos is not inherently prejudicial." *State v. Smith*, 170 Ariz. 481, 482, 826 P.2d 344, 345 (1992). *Accord Silvestre v. State*, 893 S.W.2d 273, 275 (Ct.App. 1st Dis. Tex.1995). The defendant offers no evidence to establish how he was prejudiced in having the self-imposed tattoos on his hands.[9] This situation is distinguishable from *State v. Ballantyne*, 128 Ariz. 68, 623 P.2d 857 (1981), where, during rebuttal, the prosecutor asked the defendant to roll up his shirt sleeve to show a tattoo. The tattoo was a skull with a swastika enclosed by a scroll and a circle of wings with the words "Harley–Davidson" written on the scroll. Over objection, the tattoo was shown to the jury. The prosecutor asked if the tattoo was one commonly worn by the Hell's Angels motorcycle gang. The defendant said no. On appeal of his conviction for assaulting a police officer and resisting arrest, the defendant contended that forced display of the tattoo and the prosecutor's questions linked him to the Hell's Angels motorcycle gang and deprived him of a fair trial. The appellate court in that case agreed with the defendant that the questioning was improper because, if proven, an affiliation with the Hell's Angels would have been evidence of bad character. Such

8. The trial court addressed the issue as follows:
  "Tattoos are—why people put tattoos on their body, I have never figured out, but the defendant has them and he'll have to wear them.
  "And I'm not going to allow the State to parade him in front of the jury and say, 'Look at all those tattoos,' because they don't show anything other than he was silly enough to desecrate his body. But I'm not going to have his hands bandaged to cover any tattoos. He can wear a long-sleeved shirt, but that's—we take the defendant as we find, I suppose."

9. An issue not raised or argued by the defendant in his brief but argued in the State's brief involves the defendant's motion for a new trial based upon the defendant having to keep his hands in his pockets throughout the trial. The defendant argued during the motion that the defendant was prejudiced by having to keep his hands in his pockets throughout the trial. The trial court ruled there was no prejudice caused to the defendant: "But at the trial of this case the State neither sought, nor was it done, any exhibition of the defendant's arms and hands. There was mention made of it, but the jury never saw any of those tattoos, and I don't think that's any ground at all to grant a motion for a new trial."

evidence was not admissible to prove that the defendant acted in conformity therewith because he did not put his character in issue. In the instant case, the State did not offer to display the defendant's tattoos to the jury nor was the defendant ever questioned regarding the same. We find no abuse of discretion by the trial court on this issue.

## VI.

### ADMISSION OF IRRELEVANT AND UNNECESSARY EVIDENCE

■■■■■ The defendant's next assignment of error as set out in his brief is as follows:

"THE COURT ADMITTED SEVERAL UNNECESSARY AND IRRELEVANT ITEMS INTO EVIDENCE WHICH WERE NOT CONNECTED WITH THE MURDER CASE

"The Court admitted into evidence a paper bag containing a ponytail, an axe handle and a claw hammer, all of which had nothing to do with the murder of John Moran. These items had nothing to do with the case other than inferring the Defendant was a 'bad' person. They were prejudicial and should not have been admitted."

The defendant objected at trial to each of the items now complained of on the basis of relevancy.[10] The State urges that, since the defendant did not argue "prejudice" below, he may not raise the issue of prejudice now. Rule 401 of the West Virginia Rules of Evidence provides that relevant evidence refers to "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We stated in *McDougal v. McCammon*, 193 W.Va. 229, 236, 455 S.E.2d 788, 795 (1995), that "[u]nder Rule 401, evidence having *any* probative value whatsoever can satisfy the relevancy definition." The record indicates that the ponytail was found by investigators under a mattress in Ms. Agent's home. There was

testimony that the defendant had worn a ponytail. Ms. Agent testified that the ponytail was the defendant's and that she cut it a few days before Mr. Moran was killed. The axe handle was found by investigators at Ms. Agent's home. Ms. Agent testified the axe handle was the instrument the defendant had initially indicated he would use to render the robbery victim unconscious during his planned escape. The claw hammer was found by authorities in Mr. Moran's car. Ms. Agent testified the claw hammer was used by the defendant to threaten her while they fled to Florida. We believe the evidence objected to was relevant in this case. Moreover, the probative value of this evidence outweighed any prejudice that may have been associated with the introduction of this evidence. *See* W.Va.R.Evid. 403.

## VII.

### APPOINTMENT OF CO–COUNSEL

■■■ The defendant next argues the trial court should have granted his request to have co-counsel appointed in the case. The State refers the Court to language in *State v. Chamberlain*, 112 N.M. 723, 819 P.2d 673, 683–84 (1991), wherein the Supreme Court of New Mexico pointed out that "we have not been directed to, nor have we found, authority requiring as a constitutional minimum the appointment of more than one attorney." *See also Bell v. Watkins*, 692 F.2d 999 (5th Cir.1982), *cert. denied*, 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983) (holding no constitutional right to have co-counsel appointed in a capital offense prosecution); *Hatch v. Oklahoma*, 58 F.3d 1447 (10th Cir. 1995) (holding no equal protection violation in denying defendant appointment of co-counsel in a capital offense prosecution, even though a co-defendant was appointed co-counsel); *Riley v. Snyder*, 840 F.Supp. 1012 (D.Del. 1993) (affirming denial of appointment of co-counsel in a capital offense case where it was found that the case did not present any complex factual or legal issues); *Spranger v. State*, 650 N.E.2d 1117, 1123 (Ind.1995) (no

---

**10.** The State contends the defendant's failure to cite to the record and to cite pertinent authority in support of this assignment of error renders appellate review of this particular assignment of error waived. The State is correct that this matter is not set out sufficient to satisfy our standards on appellate review. However, we will take up this issue.

constitutional right to appointment of co-counsel); *Smith v. State*, 445 So.2d 227, 230 (Miss.1984) (no constitutional right to appointment of co-counsel). The defendant has not drawn our attention to any authority holding there is a federal or state constitutional right to appointment of co-counsel or to authority showing he had a right to appointment of co-counsel under a statute or court rule. Our research has found no such authority. The State contends the trial court did not abuse its discretion in denying the request for co-counsel. The trial court stated in a correspondence denying the request:

> "I have reviewed your letter request ... and your verbal request ... seeking appointment of co-counsel for the defendant in the above-styled case. Knowing of your legal abilities, having presided in trials in which you participated as lead counsel and considering the number of years you have actively engaged in the practice of law, I have concluded that you are clearly qualified to fully represent this defendant without the assistance of co-counsel."

We are of the opinion that the State is correct in asserting that the trial court did not abuse its discretion in denying the defendant appointment of co-counsel. The trial court's decision was grounded upon its knowledge of the trial experience of the defendant's counsel. Adding to this is the fact that this case did not present any complex factual or legal issues. The heart of the State's case was the testimony of the co-defendant.

## VIII.

## BIFURCATION

■ The defendant next assigns as error the trial court's denial of his motion to bifurcate the guilt phase and penalty phase proceedings in this case. We recently held in *State v. LaRock*, 196 W.Va. at 313, 470 S.E.2d at 632, "that a unitary criminal trial in a first degree murder case meets muster under both the United States and West Virginia Constitutions." In Syllabus Point 4 of *LaRock*, we held: "A trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy." *LaRock* also held that:

> "To demonstrate that the trial court abused its discretion, a showing of 'compelling prejudice' is required. 'Compelling prejudice' exists where a defendant can demonstrate that without bifurcation he or she was unable to receive a fair trial regarding the finding of mercy and that the trial court could afford no protection from the prejudice suffered. In short, this Court will grant relief only if the appellant can show prejudice amounting to fundamental unfairness." 196 W.Va. at 315, 470 S.E.2d at 634..

During the trial in the instant proceeding, the following exchange occurred regarding the issue of bifurcation:

> "[DEFENSE]: I'd like to make one other objection, too.
>
> "THE COURT: Yes, sir.
>
> "[DEFENSE]: Not that I'm saying that this does not correctly state what the law is, but I think the—the statute is—and the law in the State of West Virginia is to—whether or not to grant mercy is—is constitutionally flawed, in that we have only one proceeding in which to present guilt or innocence and whether or not they ought to have mercy.
>
> "I think the—the better—the better way to do it is the way other states do it, which is a proceeding where the jury finds guilt or innocence and then the defendant is able to show mitigating circumstances after that, to let the jury find a recommendation.
>
> "I'm kind of in a quandary here when I can only represent the defendant—or in the same proceeding I've got to represent—guilt or innocence and then I really can't do a very good job of presenting mitigating circumstances in that same proceeding without, in effect, admitting some sort of guilt. So I ask that the Court to declare the whole thing unconstitutional.
>
> "THE COURT: Well, you're—and I'll consider that, also, the motion to bifurcate guilt and the punishment. As to the motion to bifurcate, I deny the motion. As to the constitutionality of the statute, I find it

is constitutional and has been so held by our State Supreme Court of Appeals.

"And unless and until the State Supreme Court of Appeals passes down an opinion requiring two separate phases dealing with those issues, I believe that the manner in which I will do this one is, under the current state of the law, appropriate."

The trial court's decision to deny bifurcation in the instant proceeding was not an abuse of discretion. Further, at the time of the instant proceeding, our decision in *LaRock* had not been handed down. We also point out that in *LaRock* we refused to apply the new bifurcation rule retroactively to the defendant in that case.

## IX.

### CUMULATIVE EFFECT OF ALL THE ASSERTED ERRORS

Finally, the defendant argues that the cumulative effect of the asserted errors are prejudicial and requires reversal. Under *State v. Walker*, 188 W.Va. 661, 425 S.E.2d 616 (1992), a conviction may be set aside where the cumulative effect of numerous errors prevent a defendant from receiving a fair trial, even though any one of such errors standing alone would be harmless. In view of the Court's assumed finding of error on only one issue in this case, which assumed error was found to be harmless, if indeed it was error, we see no bases for applying the cumulative error doctrine.

## X.

### CONCLUSION

For the foregoing reasons, the defendant's conviction is affirmed.

Affirmed.