# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 18-0908** (Harrison County 17-F-178-3)

**Daniel Claude Amsler,**
**Defendant Below, Petitioner**

**FILED**

**January 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Daniel Claude Amsler, by counsel Perry B. Jones and Bryan D. Church, appeals the order of the Circuit Court of Harrison County, entered on September 19, 2018, sentencing him to a term of imprisonment for life, without mercy, upon his conviction of first-degree felony murder, and a consecutive term of imprisonment for one to five years upon his conviction of conspiracy to commit first-degree robbery. Respondent State of West Virginia appears by counsel Patrick Morrisey and Thomas T. Lampman.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Daniel Claude Amsler, his girlfriend Elizabeth Ladybird Jenkins, and Keyairy Wilson briefly lived together in late March of 2017, at the Amsler/Jenkins residence while Ms. Wilson sold illegal drugs. Ms. Wilson's father contacted the Clarksburg Police Department to report that she was missing, and that he had been told that there was an incident involving a motorcycle and a gunshot at the home where she was living. When police arrived at the Amsler/Jenkins residence, Ms. Jenkins denied that Ms. Wilson lived in the home, and told officers that she had last seen Ms. Wilson a few days earlier in the parking lot of a local bar with a man Ms. Jenkins did not know. Officers asked Ms. Jenkins if anyone had visited the Amsler/Jenkins home on a motorcycle, and Ms. Jenkins named Warren Kip Hall. Officers spoke with Mr. Hall multiple times, and he implicated Mr. Amsler and Ms. Jenkins in the disappearance and death of Ms. Wilson. Barbour County Sheriff's Department found Ms. Wilson's body in a remote area soon after.

Ms. Jenkins and Mr. Amsler, at the invitation of officers, went to the local police station to give statements. Mr. Amsler told police that Ms. Jenkins shot Ms. Wilson in anger because she believed that Mr. Amsler and Ms. Wilson had been sexually intimate. Ms. Jenkins' initial statement described a plan that the parties devised to take money or drugs from Ms. Wilson, during

1

which Ms. Jenkins accidentally shot Ms. Wilson. Ms. Jenkins reported that she cut Ms. Wilson's throat and wrists and, with Mr. Amsler's assistance, disposed of Ms. Wilson's body in the wooded area where the body was found.

Mr. Amsler, Ms. Jenkins, and Mr. Hall were indicted on charges of murder and conspiracy to commit first-degree robbery. Mr. Hall entered into an agreement with the State to plead guilty to first-degree robbery and conspiracy to commit first-degree robbery. Mr. Amsler and Ms. Jenkins were tried separately and, relevant to this appeal, the jury found Mr. Amsler guilty of first-degree felony murder, for which he was sentenced to a term of imprisonment for life, without mercy, and conspiracy to commit first-degree robbery.

On appeal, petitioner asserts four assignments of error: first, that the circuit court erred in denying his motion for judgment of acquittal because there was insufficient evidence to support a felony murder conviction; second, that the circuit court erred in denying his motion for judgment of acquittal because there was insufficient evidence to support a murder conviction; third, that the circuit court erred in denying his motion for judgment of acquittal because there was insufficient evidence to support a conspiracy conviction; and, fourth, that the circuit court erred in denying petitioner's motion for a new trial on the ground that the State was allowed to present hearsay testimony from an investigating officer.

Petitioner's first three assignments of error attack the circuit court's denial of the motion for a judgment of acquittal that he made at the close of the State's case-in-chief. The Court applies a de novo standard of review to such a charge. *See State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). In doing so, we are mindful that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

As stated above, Mr. Amsler was convicted of first-degree murder under the felony murder doctrine, which "does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies[,]" including robbery. Syl. Pt. 7, in part, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978). Thus, for purposes of Mr. Amsler's assignments of error concerning the sufficiency of the State's evidence, we must determine whether the evidence could convince a reasonable person of Mr. Amsler's guilt beyond a reasonable doubt due to his participation in a robbery scheme that ended in Ms. Wilson's death. Mr. Hall's trial testimony is key in this evaluation.

Mr. Hall testified that he and Mr. Amsler had been "partying" friends for about five years.

On the morning of Ms. Wilson's murder, Mr. Amsler asked Mr. Hall to meet him at "the fishing hole." When Mr. Hall arrived, he found Mr. Amsler and Ms. Jenkins smoking crack cocaine and joined them. Mr. Hall testified that Mr. Amsler began talking about stealing from Ms. Wilson's boyfriend who, it appears, was not residing at the Amsler/Jenkins residence but was involved with Ms. Wilson's illegal activity. During that discussion, Ms. Jenkins accused Mr. Amsler of having sexual relations with Ms. Wilson, and the two argued. Mr. Hall testified that the trio decided that they would "go back and eventually rob" Ms. Wilson and her boyfriend "[f]or the dope and money," though there was no specific plan discussed among the three to use a weapon or otherwise threaten the victim when confronting her. Mr. Hall testified that he returned to the Amsler/Jenkins house first, with hopes of "messing around" with Ms. Wilson, and Mr. Amsler and Ms. Jenkins followed. While Mr. Hall sat at the kitchen table smoking cigarettes with Ms. Wilson, according to his testimony, Ms. Jenkins ran into the kitchen, pointed a pistol at Ms. Wilson and began yelling about Ms. Wilson's relationship with Mr. Amsler. Mr. Amsler remained in the living room during the fracas, and Mr. Hall testified that he joined Mr. Amsler in the living room. When he did so, he heard a gunshot from the kitchen.

Mr. Amsler characterizes the plan made at the fishing hole as one to commit larceny, not robbery—to, as Mr. Hall explained in his testimony, "take her stuff."[1] He stresses that he was not present at the time of the shooting, and that Ms. Jenkins was angry about her belief that he and Ms. Wilson had engaged in sexual relations, suggesting that Ms. Jenkins' shooting of Ms. Wilson was not done in the commission of robbery, but instead was borne of her personal animosity toward the victim. But Mr. Hall's further testimony decries that theory. Mr. Hall explained: "[Mr. Amsler] went in and got the crack off the table. And then he put plastic—garbage bags were laying there, he put a couple bags around her. I believe to keep blood. But he brung [Ms. Wilson's] crack back in the living room."

We emphasize that the enumerated felony underlying this murder conviction is not conspiracy, but is robbery itself. The statute, West Virginia Code § 61-2-12(a), does not actually define robbery. *See State v. Harless*, 168 W. Va. 707, 710, 285 S.E.2d 461, 464 (1981); *State ex rel. Vandal v. Adams*, 145 W. Va. 566, 569, 115 S.E.2d 489, 490 (1960). Rather, "[t]he elements of robbery, unaffected by the statute, are derived from the common law[.]" *State v. England*, 180 W. Va. 342, 347, 376 S.E.2d 548, 553 (1988). Those are:

> (1) [T]he unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods.

*Harless*, 168 W. Va. at 707, 285 S.E.2d at 462, syl. pt. 1, in part. The trio of Mr. Amsler, Ms. Jenkins, and Mr. Hall expressed a plan to take crack cocaine from Ms. Wilson. Mr. Hall testified that they would tell Ms. Wilson to leave the Amsler/Jenkins home, thereby confirming that the drugs would be taken in her presence. The use of force was implied when the three agreed to

---

[1] Petitioner argues that we should draw inferences from Mr. Hall's failure to inform police in earlier statements that he and the others had planned to rob Ms. Wilson. We note that he was extensively cross-examined about the early omissions, as further described in the discussion of petitioner's fourth assignment of error.

confront Ms. Wilson, who was alone at the time, together, and it was solidified when one of the co-conspirators produced a weapon. We find, under the facts of the case presented to us, that the thread of the robbery was not broken by Ms. Jenkins' violent accusations, because Mr. Amsler followed the thread when he took Ms. Wilson's crack cocaine from the kitchen table as she lay dying. The facts presented at trial are sufficient to support a jury determination that Mr. Amsler entered into a conspiracy to commit robbery, that he committed a robbery with Mr. Hall and Ms. Jenkins, and that Ms. Wilson's death resulted from the robbery events. We thus find no merit in petitioner's first, second, or third assignments of error.

During Mr. Hall's cross-examination, petitioner's counsel elicited testimony (1) showing that Mr. Hall did not inform police in his earlier statements that he, Mr. Amsler, and Ms. Jenkins planned a robbery, and (2) suggesting that Mr. Hall first devised a story of a robbery plan after asking the investigating officer, Detective Mike Walsh, "What can I do to help myself?" Mr. Hall denied that he was motivated to concoct such a story by the possibility of a plea agreement. Nevertheless, when Mr. Hall's testimony concluded, the circuit court allowed the State to recall Detective Walsh, who had already testified about the investigation. Detective Walsh testified, over petitioner's objection, that robbery was "not something [officers] just pulled out of the air," but that they had asked Mr. Hall about robbery on the basis of Ms. Jenkins' statement. Petitioner made a post-trial motion for a new trial on the ground that the circuit court had allowed the jury to hear impermissible hearsay evidence. The denial of petitioner's motion for a new trial is central to this, petitioner's fourth assignment of error, challenging that court's ruling. We apply the following standard when reviewing a circuit court's order denying a motion for new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). We agree with the State, however, that Detective Walsh's testimony is not objectionable hearsay. Rather, "[t]he hearsay rule excludes such testimony only when offered 'as evidence of the truth of the matter asserted'; and does not operate against such testimony offered for the mere purpose of explaining previous conduct." *State v. Phelps*, 197 W. Va. 713, 721-22, 478 S.E.2d 563, 571-72 (1996) (quoting *State v. Maynard*, 183 W. Va. 1, 4, 393 S.E.2d 221, 224 (1990)). Detective Walsh simply explained the course and direction of the investigation, and the circuit court did not err in denying petitioner's motion for a new trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 13, 2020

4

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison