219 P.3d 309

**In re the Marriage of Charles GERSTEN, Petitioner/Appellee/Cross–Appellant.**

v.

**Ethel Joyce GERSTEN, Respondent/Appellant/Cross–Appellee.**

**No. 1 CA–CV 08–0392.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 17, 2009.

Charles Gersten, Phoenix, In propria persona.

The Harian Law Firm PLC By Julius Harms, Glendale, Attorney for Respondent/Appellant.

## OPINION

TIMMER, Chief Judge.

¶ 1 This appeal and cross-appeal from a decree of dissolution require us to resolve a myriad of issues relating to a successor judge's role in ruling on contested issues tried before another judge, property distribution, and a request for support of a disabled adult. For the reasons that follow and in a companion unpublished memorandum decision, we affirm in part and reverse and remand in part.

## BACKGROUND

¶ 2 Ethel Gersten ("Wife") and Charles Gersten ("Husband") married in November 1975 and had two children. Husband became disabled shortly after the marriage while working as a United States postal employee. Thereafter, he received workers' compensation benefits pursuant to the Federal Employees' Compensation Act ("FECA"), 5 United States Code ("U.S.C.") section 8101 et seq. (2006). Wife worked as a teacher during the marriage and took early retirement in 2005.

¶ 3 The parties separated in July 2002. In October 2005, Husband filed a petition for dissolution of the marriage. The family court, through Judge Gregory H. Martin, conducted a trial on five non-consecutive days commencing July 10, 2007 and ending October 18, 2007, in which it considered contested issues concerning property and debt allocations and the propriety of family support. In lieu of using a court reporter to report the proceedings, the court used a digital video recording system known as "For the Record" ("FTR"). At the conclusion of the evidence, Judge Martin ordered the parties to submit written closing arguments by November 8, and they did so. Thereafter, the court took the matter under advisement.

¶ 4 Before ruling on the petition, Judge Martin resigned from the court, and Judge Susan M. Brnovich replaced him.[1] At a status conference held on November 20, Judge

---

1. At the time, Judge Brnovich was a commissioner serving as a judge *pro tempore*. The Governor of Arizona has since appointed her as a judge.

Brnovich informed the parties she planned to review the FTR recording of the trial and, unless the recording was problematic, thereafter rule on the merits of the petition. Husband objected, contending a successor judge cannot assess witness credibility and is therefore prohibited from weighing evidence introduced before the original judge and then deciding facts. He suggested that Judge Martin enter findings of fact and conclusions of law and then Judge Brnovich could apply those findings to the case. Judge Brnovich rejected Husband's position, noting the applicable court rules of procedure permitted her to proceed as she suggested. According to the judge, because the proceedings were video recorded, she would be able to evaluate the demeanor of the witnesses.

¶ 5 On January 10, 2008, Judge Brnovich entered a decree dissolving the parties' marriage and distributing their assets. After the court denied Husband's motion for new trial, Wife initiated this appeal and Husband filed a cross-appeal.[2]

## DISCUSSION

### I. Compliance with Rule 88

■ ¶ 6 Husband first argues the family court erred by denying his motion for new trial because Judge Brnovich failed to comply with Arizona Rule of Family Law Procedure ("Rule") 88 in multiple ways before ruling on his petition.[3] Rule 88 provides as follows:

If a trial or hearing has been commenced and the judicial officer is unable to proceed, any other judicial officer may proceed with it upon certifying familiarity

with the record and determining that the proceedings in the case may be completed without prejudice to the parties. At the request of a party and if an adequate electronic record is not available, the successor judicial officer shall recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judicial officer may also recall any other witness.[4]

Husband contends the court violated Rule 88 by (1) failing to certify familiarity with the entire court record, (2) failing to permit the parties an opportunity to ask for witnesses to be recalled to testify, and (3) relying on an inadequate digital recording of the trial proceedings before Judge Martin. We review the court's denial of the motion for new trial for an abuse of discretion. *Harris v. Harris,* 195 Ariz. 559, 561, ¶ 6, 991 P.2d 262, 264 (App.1999).

### A. Certification

¶ 7 Both parties contend Rule 88 only requires a successor judge to review items in the record that are relevant to the outstanding issues, and we agree. No purpose would be served by requiring a judge to review portions of the record irrelevant to the pending trial or hearing. *See State v. Old W. Bonding Co.,* 203 Ariz. 468, 472, ¶ 16, 56 P.3d 42, 46 (App.2002) (stating court should interpret court rule to give it a fair and sensible meaning); *see also Mergentime Corp. v. Washington Metro. Area Transit Auth.,* 166 F.3d 1257, 1265 (D.C.Cir.1999) (interpreting federal counterpart to Rule 88 and deciding "successor judges need only certify their fa-

---

2. By separate unpublished decision filed this date, we address a jurisdictional issue, Wife's appeal, and additional issues raised in Husband's cross-appeal. These issues are not relevant to our analysis in this opinion and do not meet the standards of publication set forth in Arizona Rule of Civil Appellate Procedure ("ARCAP") 28(b).

3. Curiously, Husband also contends Judge Brnovich erred by failing to follow a different procedure outlined in *Chiricahua Ranches Co. v. State,* 44 Ariz. 559, 39 P.2d 640 (1934), and *Daru v. Martin,* 89 Ariz. 373, 363 P.2d 61 (1961), for successor judges faced with a motion for new trial. *Chiricahua Ranches,* however, has been superseded by the 1996 promulgation of the current version of Arizona Rule of Civil Procedure

63, which substantially mirrors Rule 88. *See Davis v. Davis,* 195 Ariz. 158, 162–63, ¶¶ 17–19, 985 P.2d 643, 647–48 (App.1999).

4. At the time Judge Brnovich informed the parties on November 20, 2007, that she intended to review the FTR recordings, the second sentence in Rule 88 did not refer to the availability of an adequate electronic record. By the time Judge Brnovich entered the dissolution decree on January 10, 2008, however, the current version of Rule 88 had become effective. We need not decide which version of Rule 88 applied in this case, however, as the sentence was never triggered by a request to recall witnesses. *See infra* ¶ 14.

miliarity with those portions of the record that relate to the issues before them"); *Canseco v. United States,* 97 F.3d 1224, 1227 (9th Cir.1996) (to same effect). The parties disagree, however, about what items in the record were relevant to Judge Brnovich's rulings. Husband asserts that because Judge Martin never made factual findings, Judge Brnovich was obligated to review the entire pre-trial record in chronological order before reviewing the FTR recordings in order to "step into the shoes" of Judge Martin and make credibility determinations. Wife responds that Judge Brnovich properly reviewed the portion of the record relevant to the trial rather than the entire record.

¶ 8 We agree with the *Mergentime* court that "the extent of the certification obligation depends upon the nature of the successor judge's role in a given case." 166 F.3d at 1265. Thus, a successor judge who steps in mid-trial may need to be familiar with the entire record in order to gain sufficient context to make evidentiary rulings, while a successor judge who inherits a case post-verdict may need to consider a narrower range of items related only to post-trial motions. *Id.* The key consideration for the successor judge in deciding what to review is the relevancy of the items to pending matters.[5] See *id.; Canseco,* 97 F.3d at 1227.

¶ 9 In this case, Judge Brnovich assumed responsibility for ruling on the petition after the close of evidence and submission of closing arguments. With one exception, Judge Martin made all evidentiary rulings during the trial. Thus, Judge Brnovich was required to review all portions of the record relevant to a ruling on the contested issues related to the petition for dissolution of the marriage. She reviewed the trial exhibits, the FTR recordings for the entire trial, the written closing arguments, and Husband's proposed findings of fact and conclusions of law. In response to Husband's argument in his motion for new trial that the judge erred by failing to review the entire record, Judge Brnovich stated she had adhered to "a basic rule related to trial proceedings [ ] that the Court can only consider evidence and arguments presented at trial."

¶ 10 We agree with Wife that Judge Brnovich reviewed only portions of the record relevant to a ruling on the contested issues at trial regarding property and debt allocation and the propriety of family support. Absent agreement of the parties, portions of the record not admitted in evidence at trial had no evidentiary value unless they were the proper subject of judicial notice. *In re Marriage of Kells,* 182 Ariz. 480, 483, 897 P.2d 1366, 1369 (App.1995) (holding financial affidavit filed pre-trial but not admitted in evidence had no evidentiary value at trial absent agreement and court could take judicial notice of the fact a party had filed the affidavit but not the truth of its assertions);[6] Ariz. R. Evid. 201 (limiting judicially noticed facts to those "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). Husband does not identify any portion of the pre-trial record that relates to the contested property and support issues and falls within this category. Consequently, Judge Brnovich did not err by solely relying on the trial exhibits, FTR recordings and post-trial filings to resolve these issues.

¶ 11 Husband additionally argues that Judge Brnovich needed to certify familiarity with the entire record in order to rule on an outstanding evidentiary issue. Wife sought to introduce in evidence exhibit 68, a list of guns owned by the parties together with

5. In *Mergentime,* the successor judge asked the parties to identify items in a large record that were material to the pending ruling. 166 F.3d at 1265. Although Rule 88 does not require this procedure, a successor judge reasonably could take this approach in order to ensure an efficient and sufficient review of the record.

6. Husband argues *Kells* is inapplicable because it did not involve Rule 88. Husband misses the point. The holding in *Kells* that the court was constrained to decide a case based on the evidence adduced at trial and facts subject to judicial notice identifies the portion of the record relevant to deciding contested issues tried to the court. This principle holds true whether a case is tried by one judge or two.

their descriptions and values. Husband objected on the basis of hearsay, and Judge Martin initially sustained the objection but later reconsidered the matter, taking it under advisement. Judge Brnovich thereafter reviewed the testimony regarding exhibit 68, overruled the objection, and admitted the exhibit in evidence. Husband does not challenge this ruling on appeal, but asserts the judge needed to review the entire record before ruling on the objection. He relies on *Mergentime*, which stated a successor judge who steps in prior to the conclusion of a trial must be familiar with the entire record in order to make evidentiary rulings. 166 F.3d at 1265.

¶ 12 We are not persuaded that Judge Brnovich needed to review the entire record in order to make a single evidentiary ruling. As the *Mergentime* court noted, a judge who steps in during trial must be prepared to rule on unknown evidentiary issues, thereby justifying a need to review the entire record for context. *Id.* Conversely, a judge who steps in after the close of evidence must prepare herself to rule only on known evidentiary issues. In that situation, the judge must only certify familiarity with the portions of the record relevant to that ruling. In the present case, Husband does not identify any items in the pre-trial record that Judge Brnovich needed to review in order to rule on the admissibility of exhibit 68. Moreover, the FTR recordings contained extensive argument regarding the admissibility of the exhibit as a compilation. Thus, we cannot say Judge Brnovich erred by failing to review portions of the pre-trial record before ruling on the admissibility of exhibit 68 or that any such error harmed Husband. *See Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 91, ¶¶ 30–34, 977 P.2d 807, 813 (App.1998) (noting error not cause for reversal absent showing of harm).

¶ 13 We agree with Husband, however, that Judge Brnovich erred by failing to review pre-trial portions of the record before ruling on the propriety of an attorneys' fee award pursuant to Arizona Revised Statutes ("A.R.S.") § 25–324 (Supp. 2008). That statute authorizes an award of fees after the court considers the parties' financial re-

sources and "the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25–324(A). In denying the motion for new trial, Judge Brnovich stated her "assessment of whether to award attorney fees was based on the arguments raised at trial and the Court's assessment of the parties' credibility at trial." As Husband points out, this litigation was hotly contested and Judge Martin considered and ruled upon allegations that Wife had committed discovery and disclosure violations. For example, Judge Martin held a hearing between trial days and ordered Wife to disclose more information about her assets and financial resources. Judge Brnovich did not review that proceeding or other pre-trial rulings regarding discovery and disclosure issues. As a result, the judge was not in a position to assess the reasonableness of the parties' positions taken "throughout the proceedings." We therefore reverse that portion of the decree declining to award attorneys' fees and remand for reconsideration of Husband's request. In doing so, the court must familiarize itself with that portion of the record necessary to permit it to assess the reasonableness of the parties' positions taken throughout the case. Thereafter, the court should comply with the certification requirements of Rule 88 with respect to that issue.

**B. Recall of witnesses**

¶ 14 Husband next contends Judge Brnovich erred by failing to recall available witnesses pursuant to Rule 88. Husband acknowledges that neither party asked the judge to recall witnesses. Nevertheless, he argues Judge Brnovich violated the "intent" of Rule 88 by abruptly ending the November 20, 2007 telephonic status conference before Husband could make such a request. We reject this contention. Even assuming Husband felt constrained from making a request to recall witnesses during the status conference, nothing prevented him from subsequently filing a request. Indeed, more than a month passed from the status conference until the court ruled on the petition, permitting him sufficient time to make a request. Judge Brnovich did not err by failing to recall witnesses.

## C. Adequacy of FTR recordings

¶ 15 Husband asserts Judge Brnovich erred by failing to recall witnesses sua sponte because the FTR recordings were too poor to allow the judge to make credibility determinations. Specifically, he complains the FTR recordings produced a small picture, the quality of the audio and sound recordings was poor, and the video "jump[ed]" among cameras, leaving gaps in viewing witnesses. As support for his contention, Husband points out that the written transcript of the proceedings includes a number of places at which words in the recordings are said to be "indiscernible."

¶ 16 Despite the gaps in portions of the transcripts, Judge Brnovich stated in the decree that she "had no problems with any of the FTR recordings and was able to hear and see all of the testimony." As a result, she found she could rule on the case without prejudice to either party. In denying the motion for new trial, the judge acknowledged that the quality of the FTR recording diminished when the parties stepped away from the microphones but maintained she was able to make adjustments to the volume through the FTR program. As a result, she experienced "no problem hearing anything that was said during trial while the trier of fact was on the bench." The record before us does not provide any reason to disbelieve Judge Brnovich in the assessment of her ability to view and hear the FTR recordings. Our review of the FTR recordings [7] revealed that the quality of the recordings supported Judge Brnovich's finding that she was able to adequately hear the testimony and view the witnesses. We do not detect error.[8]

## II. Property division

¶ 17 Husband argues the family court erred by allocating to Wife a portion of his extensive firearms collection purchased during the marriage. Specifically, he contends that because he purchased the firearms with his FECA proceeds, and those proceeds were his sole and separate property, the firearms were not community assets subject to division. We review the court's characterization of the firearms as community property de novo as an issue of law. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15, 5 P.3d 911, 915 (App.2000).

¶ 18 The family court ruled that Husband's FECA income was community property during the marriage, relying on this court's decision in *Bugh v. Bugh*, 125 Ariz. 190, 192, 608 P.2d 329, 331 (App.1980), that state workers' compensation benefits compensate a claimant for loss of earning capacity, a community asset. Husband does not challenge the *Bugh* holding but asserts it is inapplicable because FECA benefits compensate a claimant for injury to personal well-being and are therefore the claimant's sole and separate property. *See Jurek v. Jurek*, 124 Ariz. 596, 598, 606 P.2d 812, 814 (1980) (holding husband's compensation for personal injuries belong to him as separate property although compensation for medical expenses and lost wages is community property). Alternatively, Husband contends the federal government gifted the FECA benefits, thereby making them his sole and separate property. *See* A.R.S. § 25–211(A)(1) (excluding gifts from definition of community property).

¶ 19 Congress enacted FECA in 1916 to provide benefits to federal employees injured or killed in the course of employment. *Noble v. United States*, 216 F.3d 1229, 1234 (11th Cir.2000). Contrary to Husband's position, FECA benefits compensate a claimant for lost wages, loss of earning capacity, and medical expenses. *See* 20 C.F.R. § 10.5 (2009) (defining "benefits" and "compensation" under FECA); *Ostrowski v. U.S. Dep't of Labor, Office of Workers' Comp. Programs*, 653 F.2d 229, 231 (6th Cir.1981) (holding purposes of FECA "include prompt

---

7. The FTR recordings are not official transcriptions of the proceedings. *See* ARCAP 11(a)(1). Thus, we reviewed the recordings only to assess the accuracy of Judge Brnovich's description of them; we did not review them for content.

8. Husband asks us to "establish requirements as to the technical specifications of the recordings

to be used" by successor judges pursuant to Rule 88. We decline this request as we are not charged with this responsibility. Additionally, the supreme court has established technical and operational requirements for digital recordings of court proceedings. *See* Ariz. Code of Jud. Admin. § 1–602.

assistance in meeting the employee's medical expenses and continuation of wage payments when he is injured in the course of his employment"). These benefits increase if the claimant has a spouse or dependent children. *See* 5 U.S.C. § 8110. As previously noted, benefits paid for wage replacement and to reimburse medical expenses are community assets. *Jurek,* 124 Ariz. at 598, 606 P.2d at 814; *Bugh,* 125 Ariz. at 192, 608 P.2d at 331. Husband did not demonstrate to the family court what portion of his FECA benefits, if any, constituted compensation for injury to his personal well-being. *See In re Marriage of Geigle,* 83 Wash.App. 23, 920 P.2d 251, 256 (1996) (placing burden on FECA beneficiary to show what portion of benefits represented deferred compensation [community property] and what portion represented lost future income [separate property]); *see also In re Marriage of Cupp,* 152 Ariz. 161, 163, 730 P.2d 870, 872 (App.1986) ([t]he share of a lump-sum workers' compensation award paid during the marriage that compensated the community for lost wages during the marriage was a community asset). Absent such a showing, the family court correctly concluded that the benefits were community assets.

¶ 20 Finally, we are not aware of any authority supporting Husband's contention that FECA benefits are a gift. Contrary to the hallmark of a gift, the government receives something in return from FECA: A federal employee injured in the course of employment cannot sue the federal government for tort liability. *See United States v. Lorenzetti,* 467 U.S. 167, 169, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984) ("Because the United States' liability for work-related injuries under FECA is exclusive, . . . respondent cannot recover from the United States for losses such as pain and suffering that are not compensated under FECA.").

¶ 21 For these reasons, the family court did not err by concluding that Husband's FECA benefits paid during the marriage were community property. It follows, therefore, the firearms Husband purchased during the marriage using FECA proceeds were community assets. The family court did not err by characterizing them as such. In light of our decision, we need not address Husband's alternative argument that the family court erred by misconstruing his testimony about deposit of FECA proceeds into a joint account.[9]

## III. Family support

¶ 22 A parent's legal obligation to support a child typically ceases when that child turns eighteen years of age or graduates high school, whichever occurs later. A.R.S. §§ 25–320(F) (Supp. 2008), –501(A) (2007). Under certain circumstances, however, the family court can order either or both parents to provide support for mentally or physically disabled adult children. Section 25–320, A.R.S., provides as follows:

> E. Even if a child is over the age of majority when a petition is filed or at the time of the final decree, the court may order support to continue past the age of majority if all of the following are true:
>
> 1. The court has considered the factors prescribed in subsection D [10] of this section.
>
> 2. The child is severely mentally or physically disabled as demonstrated by the fact that the child is unable to live independently and be self-supporting.
>
> 3. The child's disability began before the child reached the age of majority.

*See also* A.R.S. § 25–809(F) (2007) (to same effect in context of maternity and paternity actions) and A.R.S. § 25–501(A) ("In the case of mentally or physically disabled children, if the court, after considering the factors set

---

**9.** Husband also complains the family court was wrong in stating he had failed to produce a comprehensive list of firearms purchased during the marriage and/or in his possession. According to Husband, he filed the lists early in the lawsuit. He fails to develop this argument, however, by explaining how this purported error harmed him. We therefore reject it. Regardless, as previously explained, *see supra* ¶ 10, the court

was required to rule on the property issues based on the evidence presented at trial. *Kells, 182* Ariz. at 483, 897 P.2d at 1369.

**10.** Section 25–320(D), A.R.S., requires the supreme court to establish guidelines for determining the amount of child support and lists relevant factors on which to base those guidelines.

forth in § 25–320, subsection D, deems it appropriate, the court may order support to continue past the age of majority.").

¶ 23 Husband argues the family court erred by denying his request that Wife pay support for their adult, disabled son Adam, who lives with Husband. The court found that Adam suffers from several chronic diseases and is in fact disabled. Relying on prior decisions from this court, however, the family court rejected Husband's request because he does not serve as Adam's legal custodian or guardian. Although we review the court's decision regarding the propriety of child support for an abuse of discretion, we review its interpretation of the pertinent statutes de novo as an issue of law. *Guerra v. Bejarano,* 212 Ariz. 442, 443, ¶ 6, 133 P.3d 752, 753 (App.2006).

¶ 24 In *Provinzano v. Provinzano,* 116 Ariz. 571, 574–75, 570 P.2d 513, 516–17 (App. 1977), *superseded in part by statute,* A.R.S. § 25–320(B), *as recognized in Mendoza v. Mendoza,* 177 Ariz. 603, 605, 870 P.2d 421, 423 (App.1994), this court considered the propriety of the family court's refusal to order a husband to pay child support to his ex-wife for the couple's disabled adult daughter pursuant to former A.R.S. § 25–320(B). That statute authorized the court to order support for a mentally or physically disabled child to continue past the age of emancipation "and to be paid to the custodial parent, guardian or child." *Id.* at 574, 570 P.2d at 516. Among other things, the *Provinzano* court held that the court could authorize child support for an adult disabled child when "there has been a contemporaneous or prior award of custody of the emancipated child to one of the parents at a proceeding wherein the emancipated child is a party and the issues of the mental or physical disability of the child

are presented to the court by appropriate pleadings." *Id.* at 575, 570 P.2d at 517. We have adhered to this holding in subsequent decisions.[11] *See Mendoza,* 177 Ariz. at 605, 870 P.2d at 423; *Ferrer v. Ferrer,* 138 Ariz. 138, 140, 673 P.2d 336, 338 (App.1983). Likewise, the family court in this case followed *Provinzano's* holding in denying support to Husband.

¶ 25 Husband argues the family court erred by requiring a custody or guardianship order before ordering support for Adam because the legislature removed this requirement in subsequent legislation. Wife counters, albeit without explanation, that *Provinzano* remains viable under the current statutory provision. We agree with Husband.

¶ 26 In 2004, the legislature redesignated subsection B of A.R.S. § 25–320 as subsection E before amending it the next year to its present form and removing the language authorizing payment "to the custodial parent, guardian or child." *See* A.R.S. § 25–320 *Historical and Statutory Notes.* Today, § 25–320(E) simply states that in the case of a disabled child, the court "may order support to continue past the age of majority" if the three criteria outlined above are met.[12] *See supra,* ¶ 22. Thus, under the plain language of § 25–320(E), a custody or guardianship order is not required before the court may order support for a disabled child. *Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.,* 217 Ariz. 606, 608, ¶ 6, 177 P.3d 867, 869 (App.2008) (stating that if the language of a statute is clear and unambiguous we apply it without invoking secondary principles of statutory construction). By amending § 25–320(E) and removing the payee language, the legislature superseded *Provinzano* and its progeny to the

---

11. The *Provinzano* court also held that former § 25–320(B) authorized support for an adult disabled child only when the court had acquired jurisdiction before the child turned eighteen years of age. 116 Ariz. at 575, 570 P.2d at 517. In 1980, however, the legislature superseded this holding by amending § 25–320(B) to authorize the court to make such support awards even when the child reaches majority before the court obtains jurisdiction. *Mendoza,* 177 Ariz. at 605, 870 P.2d at 423.

12. Wife contends that because § 25–320(E) authorizes the court to order support "to continue past the age of majority," a support order must exist prior to the child's emancipation in order for the court to order support under this provision. We reject this contention as § 25–320(E) explicitly provides that the court is authorized to make the award "[e]ven if a child is over the age of majority when a petition is filed," thereby making the existence of a prior support order impossible.

extent these cases required a custody or guardianship order as a prerequisite to a support order requested by a parent pursuant to this provision.

¶ 27 Because the family court refused Husband's request for support for Adam solely because Husband was not Adam's legal custodian or guardian, we reverse this part of the dissolution decree and remand for further proceedings. On remand, the court should determine if Adam is disabled under the criteria set forth in § 25–320(E). If not, the court must deny Husband's request. If the court finds Adam is disabled under this provision, however, the court is authorized to order either or both Husband and Wife to pay support for Adam. A.R.S. §§ 25–320(A), –501(A). The court may order payment directly to Adam or order Husband to use the support payments for Adam's benefit. In such circumstances, however, because neither Husband nor Wife serve as Adam's legal custodian or guardian, and his interests would be affected by any support order, the court should join Adam as an indispensable party to the proceedings.[13]

---

13. Prior to trial, Adam petitioned the court to permit him to intervene in the case and assert claims for support against both parents, but the court denied the request. Adam did not appeal the ruling upon entry of the final decree. Although Husband criticizes that ruling on appeal, he cannot challenge it on appeal because he is not aggrieved by it. *See In re Estate of Friedman,*

A.R.S. § 25–314(D) (2007) (authorizing court to "join additional parties necessary for the exercise of its authority"); Ariz. R. Civ. P. 19(a) (governing joinder of indispensable parties).

## CONCLUSION

¶ 28 For the foregoing reasons, we reverse the dissolution decree insofar as it denies Husband's request for attorneys' fees and child support and remand for further proceedings regarding these requests and to address additional issues as set forth in the companion memorandum decision. We affirm the remaining portion of the decree.

CONCURRING: MICHAEL J. BROWN and PATRICIA K. NORRIS, Judges.

217 Ariz. 548, 552, ¶ 11, 177 P.3d 290, 294 (App.2008) ("When an alleged error applies to only one party who does not appeal, another party cannot make that argument on the non-appealing party's behalf."); ARCAP 1 ("An appeal may be taken by any party aggrieved by the judgment.").