NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BART LEWIS HILES, *Appellant.*

No. 1 CA-CR 16-0588
FILED 7-6-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-129328-001 DT
The Honorable Gregory S. Como, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Joel M. Glynn
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

**W I N T H R O P**, Judge:

**¶1**　　　　Bart Lewis Hiles ("Appellant") appeals his conviction and sentence for armed robbery. Appellant's counsel has filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000); *Anders v. California*, 386 U.S. 738 (1967); and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), stating he has searched the record on appeal and has found no arguable question of law that is not frivolous. Appellant's counsel therefore requests that we review the record for fundamental error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999) (stating that this court reviews the entire record for reversible error). This court granted counsel's motion to allow Appellant to file a supplemental brief *in propria persona*, and Appellant has done so, raising issues that we address.

**¶2**　　　　We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A) (2010).[1] Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY[2]

**¶3**　　　　On July 1, 2015, a grand jury issued an indictment charging Appellant with Count I, armed robbery, a class two felony, in violation of A.R.S. § 13-1904 (2010); Count II, possession or use of dangerous drugs, a class four felony, in violation of A.R.S. § 13-3407 (Supp. 2016); and Count III, possession of drug paraphernalia, a class six felony, in violation of A.R.S. § 13-3415 (2010). The trial court granted Appellant's motion to sever

---

[1]　　　We cite the current version of all applicable statutes because no revisions material to this decision have occurred since the date of the offense.

[2]　　　We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant. *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

Count I from Counts II and III.  The State later filed allegations of historical priors, alleging that Appellant had four prior felony convictions for sentence enhancement purposes.

¶4            At trial on Count I, the State presented the following evidence:  Shortly before midnight on June 24, 2015, a male and a female entered a convenience store in Mesa.  The male had a backpack with bright orange straps.  Soon thereafter, both the male and female exited the store.  However, the male, whom the clerk identified at trial as Appellant, returned to the store alone, placed a few items on the counter, and asked for a bottle of Smirnoff vodka located behind the counter.  Once the store clerk finished ringing up Appellant's purchases, Appellant lifted his shirt and removed a black handgun from his waistband.  Scared, the store clerk threw the bag at Appellant and said, "[Y]ou can have it."  Appellant said, "Yeah, yeah, that's what I thought," and walked out the store with the items.  After watching Appellant leave, the clerk called the police.

¶5            At 12:01 a.m., Mesa police officers Hash and Lavin were dispatched to the convenience store.  Officer Hash spoke with the clerk and viewed the store's surveillance video to gather a description of the robber.  At approximately 2:20 a.m., Officer Lavin, who had also viewed the store's surveillance video, conducted an area check near the store and noticed a male subject (Appellant) walking beside the road carrying a backpack with bright orange straps and wearing clothing similar to that worn by the male subject the officer had viewed in the store's surveillance video.  The officer drove up next to Appellant, looked at his face, and immediately recognized Appellant "as being the subject from the video that [the officer had recently] watched."  After arresting Appellant, Officer Lavin searched Appellant's backpack and found a black metal BB handgun, a bottle of Smirnoff vodka, and an olive-green hat with a red patch on the front identical to the hat worn by the male subject in the store's surveillance video.

¶6            The jury found Appellant guilty as charged of one count of armed robbery.  The jury also found the existence of three aggravating circumstances for sentencing purposes.  Appellant later entered a plea agreement, pleading guilty to Count II, possession or use of dangerous drugs, in exchange for dismissal of Count III.

¶7            The trial court found that Appellant had four prior felony convictions—including two historical prior felony convictions—for sentencing purposes, sentenced Appellant to the presumptive term of 15.75 years' imprisonment, and credited Appellant for 412 days of presentence incarceration.  The court also placed Appellant on probation for three years

on Count II following his release from the Arizona Department of Corrections on Count I.  Appellant filed a timely notice of appeal.

**ANALYSIS**

I.      *Alleged Ineffective Assistance of Counsel*

**¶8**          Appellant contends that his trial counsel was "inadequate" and "ineffective," and advised him to not testify in his own defense, despite Appellant's desire to do so.  In addition, Appellant contends his counsel failed to offer into evidence a store purchase receipt Appellant obtained for items "almost identical to" the items he took from the convenience store.  Appellant's contentions constitute claims of ineffective assistance of counsel.

**¶9**          We do not address Appellant's contentions challenging the effectiveness of trial counsel on direct appeal, however, because claims of ineffective assistance of counsel must be brought through Rule 32 proceedings.  *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002).

II.     *Alleged Jury Contamination*

**¶10**         Appellant argues that the trial court erred by not declaring a mistrial when a juror saw him handcuffed in the hallway during a lunch recess.  Appellant maintains that, as a result, the entire jury panel was contaminated.

**¶11**         The facts pertaining to this argument are as follows:  On the second day of trial (Tuesday, March 1), during the trial court's lunch break, the court was advised that Juror No. 2 had observed Appellant in handcuffs outside the courtroom.  After a brief discussion with the parties, the court questioned Juror No. 2 outside the presence of the other jury members about the incident.  Juror No. 2 advised the court that, although she had seen Appellant near the courtroom door, she had not observed any handcuffs.  She also avowed that she had not spoken to any other jurors about the incident.  The court noted that Juror No. 2 had already advised the court she had a scheduling conflict on Thursday, March 3, and suggested to the parties that, "in an abundance of caution to both parties, but in this case particularly to the defendant to make sure that he receives a fair trial," Juror No. 2 be excused from further jury service.  The court noted that the other jurors "would likely think it may be due to [Juror No. 2's] scheduling conflict anyways."  Juror No. 2 and counsel for both parties agreed to the court's proposal without objection, and the court excused Juror No. 2 from further jury service.

¶12　　　　Absent any showing of prejudice, the fact that a juror may have seen Appellant in restraints outside the courtroom did not deny Appellant a fair trial. *See State v. Galioto*, 126 Ariz. 188, 192, 613 P.2d 852, 856 (App. 1980); *see also State v. Johnson*, 147 Ariz. 395, 399, 710 P.2d 1050, 1054 (1985) ("The question is whether the defendant was prejudiced by what the jury saw, not the mere fact that it was seen." (citation omitted)). Although Appellant speculates that he may have been prejudiced, the record provides no evidence to support Appellant's speculation.

¶13　　　　Furthermore, the trial court instructed the jury, as part of its preliminary instructions, as follows:

> In a civil case, the jurors are permitted to discuss the evidence during the trial while the trial progresses. In a criminal case like this one, the jurors are not permitted to discuss the evidence until all the evidence has been presented and the jurors have returned – retired to deliberate on the verdict.
>
> You may not discuss the evidence among yourselves until you retire to deliberate. You cannot discuss any aspect of the case with each other until it is submitted for your deliberations at the end of the trial.

We presume that jurors follow jury instructions. *State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996). Nothing in the record suggests that Juror No. 2 did not follow the court's instructions, and in fact she avowed she had not shared any information with the other jurors. Absent evidence to the contrary, we cannot agree with Appellant that fundamental error occurred through jury contamination.

### III.　Store Clerk's Alleged Perjury and Credibility

¶14　　　　Appellant argues that fundamental error occurred because the convenience store clerk selected a photograph of someone other than Appellant from a photo lineup shortly after the robbery and committed perjury by modifying her testimony to fit the prosecutor's questioning. Appellant's claim that the clerk committed perjury and prejudiced Appellant is not supported by the record.

¶15　　　　A person commits perjury by making (1) a false sworn statement regarding a material issue, believing it to be false, or (2) a false unsworn declaration or statement regarding a material issue that the person subscribes as true under penalty of perjury, believing it to be false. A.R.S.

§ 13-2702 (2010). However, "[c]ontradictions and changes in a witness's testimony alone do not constitute perjury." *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991) (citations omitted).

¶16 The following facts apply to Appellant's argument: Shortly after the incident, Officer Hash presented the store clerk with a six-photo lineup.[3] The photo lineup included a picture of Appellant in the No. 3 position. The clerk quickly eliminated photo numbers 1, 2, 4, and 5, but had difficulty differentiating between photo numbers 3 and 6. Ultimately, she selected the photograph in the No. 6 position.

¶17 At trial, the clerk identified Appellant as the man who pulled the gun on her. She acknowledged she had been shown a photo lineup and had selected the photo in the No. 6 position, but explained she had struggled to select between photo numbers 3 and 6 because the robber wore his hat "kind of low," and stated she was sure of her identification at trial because she remembered Appellant's facial features and could "see him like face-to-face now and I recognize his face." On cross-examination, defense counsel attempted to impeach the clerk's identification of Appellant by challenging her memory of the robbery and highlighting her previous selection of the No. 6 photo. On re-direct examination, the prosecutor asked the clerk, "So when you pointed out [Appellant at trial], was that based upon the fact that that's the person that you saw that night?" The clerk responded affirmatively, stating that she "recognized [Appellant's] face." The prosecutor later asked, "Did you have any reason to look to see if he had any tattoos or piercings?" The clerk responded:

> I didn't even pay that -- when I [saw] the gun, I just [saw] a gun and my life. That's all I [saw]. I didn't see anything else. I [saw] he had a pocket knife about this long on his side and I noticed that because he was at the register.

---

[3] Officer Hash did not construct the lineup and had not been advised which, if any, of the photos was that of Appellant. Appellant argues the police should have transported the store clerk to identify him on the night of the robbery, ostensibly in a one-man show-up procedure, rather than through a six-photo lineup procedure. Generally, however, one-man show-up procedures are inherently suggestive, *State v. Williams*, 144 Ariz. 433, 439, 698 P.2d 678, 684 (1985), and the lineup procedure used by law enforcement in this case does not appear to have been suggestive; accordingly, we find no error, much less fundamental, prejudicial error in law enforcement's use of the six-photo lineup employed here.

> Other than the tattoos or whatever, I didn't notice anything. I just noticed when he lift[ed] up his shirt and he pulled that gun out and I said I'm about to die.

Defense counsel did not object to this testimony, and the prosecutor asked no further questions of the store clerk.

¶18 Appellant argues the clerk's response to the prosecutor's final question constituted perjury because the clerk tailored her answer to the prosecutor's question. Although the clerk's response arguably contained internal inconsistencies and was in part nonresponsive, it did not constitute demonstrably false and material misstatements rising to the level of perjury and was relevant to the jury's determination of the clerk's credibility. The jury, as the fact finder, had the exclusive duty to determine the credibility of the witness and decide the proper weight to give the testimony of the witness. *See State v. Cox*, 217 Ariz. 353, 357, ¶ 27, 174 P.3d 265, 269 (2007); *State v. Fimbres*, 222 Ariz. 293, 297, ¶ 4, 213 P.3d 1020, 1024 (App. 2009). We defer to the fact finder as long as its findings are supported by the record and are not clearly erroneous. *See State v. Grell*, 212 Ariz. 516, 528, ¶ 58, 135 P.3d 696, 708 (2006). On this record, the clerk's testimony did not constitute perjury, was not fundamental error, and did not prejudice Appellant.

### IV. Display of Appellant's Tattoos

¶19 Appellant contends that the trial court committed reversible error by granting the State's motion for Appellant to display the tattoos on his arms to the jury.[4] Appellant argues that the requirement of displaying his tattoos led the jury to infer the tattoos were prison tattoos and was thus prejudicial to him.

¶20 In this case, the tattoos were probative of identity. Surveillance video of the robbery showed the suspect's arms had tattoos on the front and back that appeared similar to those on Appellant's arms. Further, Appellant's contention that jurors might have inferred that his tattoos were prison tattoos is mere speculation, and "[t]he mere fact that a defendant has tattoos is not inherently prejudicial." *State v. Smith*, 170 Ariz. 481, 482, 826 P.2d 344, 345 (App. 1992). Nothing in the record suggests that the tattoos gave rise to prejudicial associations in the minds of the jurors.

---

4       Arizona Rule of Criminal Procedure 15.2(a)(8) provides in part for a criminal defendant to "[s]ubmit to a reasonable physical or medical inspection of his or her body, provided such inspection does not include psychiatric or psychological examination."

*V.    Fingerprints and DNA*

**¶21**         Appellant argues that reversible error occurred because the police collected no fingerprints or DNA from the crime scene, and a juror inquired about such evidence.

**¶22**         When available, fingerprints and DNA may be used as methods of identification, but like other methods of identification, they may still be challenged on a foundational basis or through controverting evidence. *See State v. Bogan*, 183 Ariz. 506, 514, 905 P.2d 515, 523 (App. 1995). Given that it is often impossible to obtain fingerprint and DNA samples from public locations, such as the convenience store in this case, the investigating officers' apparent decision to not attempt to collect such evidence was wholly appropriate. The presence or absence of such samples simply goes to the weight of the evidence, and the weighing of evidence, in addition to the drawing of legitimate inferences from the facts, is a function of the jury. *See State v. Reynolds*, 108 Ariz. 541, 543, 503 P.2d 369, 371 (1972).[5]

*VI.    Jury Questions During Deliberations*

**¶23**         Appellant also argues that the trial court failed to properly answer questions posed by the jury during deliberations concerning the evidence of his tattoos.

**¶24**         After the jury retired to deliberate, a juror question was submitted to the court that asked, "Can we see courtroom video?" The court advised counsel that "I assume they mean the FTR,"[6] and after consulting with counsel, the court responded, "Please identify what part(s) of the courtroom video you are interested in seeing." The jury responded, "Tattoo video [of Appellant's arms] from yesterday in the courtroom." The court again discussed the matter with counsel, and the prosecutor noted that she had viewed the video and "it's not like a continuance video because

---

[5]      Appellant also suggests the State should have sought admission of his backpack into evidence rather than photographs of the backpack, but as with the lack of fingerprints and DNA evidence, he does not argue how the lack of the backpack itself prejudiced him. We find no error, much less fundamental, prejudicial error in the State's decision to not seek admission of the backpack.

[6]      FTR, or "For the Record," is a digital recording system used to record court proceedings, often in lieu of a court reporter. *Gersten v. Gersten*, 223 Ariz. 99, 101, ¶ 3, 219 P.3d 309, 311 (App. 2009).

I wasn't speaking so the camera wasn't on [Appellant] the entire time. It's basically that blip of [Appellant] that I got the screen shot from and we can full [sic] it up on the FTR, but when I viewed it, it's not what we really saw -- like how we saw it in court because nobody was speaking so none of the cameras were capturing that." Defense counsel also objected that playing the video would "place undue influence on that again. They already had an opportunity to view it and saw it and that's it." The court and counsel then viewed the video, and the court subsequently noted that "it's the consensus of all of us that -- well, first of all, [the video] doesn't show the complete sequence of [Appellant] displaying the tattoos and I -- my personal view of it is it's not likely to really help [the jury] resolve the case, and I think it's the consensus of everyone that we shouldn't -- have that shown -- have that video clip shown to them." Both counsel agreed, and the court then instructed the jury, "The video will not be shown. You must rely on your memories of what you saw."

¶25        On this record, the trial court's responses to these and other juror questions was entirely appropriate. We find no error, much less fundamental, prejudicial error in the court's handling of and responses to the jury questions raised during deliberations.

VII.    *Alleged Excessive Sentence*

¶26        Appellant argues that the trial court erred in finding he had four prior felony convictions, including two historical prior felony convictions, making him a category three offender for sentencing enhancement purposes.[7] He maintains three of his four prior felony convictions (from crimes committed in 1997 and 1998) "were not substantiated or crimes of [the] same nature." As a result, Appellant claims his sentence was improperly enhanced.

---

[7]        The State presented evidence and the court found that Appellant had the following prior felony convictions: (1) disorderly conduct, a class six felony, committed on January 6, 1997; (2) theft, a class four felony, committed on February 25, 1997; (3) attempted theft, a class four felony, committed on June 8, 1998; and (4) disorderly conduct, a class six felony, committed on October 7, 2012. The court found that the 1998 and 2012 crimes were historical prior felony convictions. Appellant does not challenge the court's finding that the State proved the 2012 crime qualified as a historical prior felony conviction.

¶27        Appellant first contends that three of the prior felony convictions brought forth by the State were not "substantiated" through a fingerprint comparison.

¶28        The State must prove a defendant's historical prior felonies by clear and convincing evidence. *State v. Cons*, 208 Ariz. 409, 415, ¶ 15, 94 P.3d 609, 615 (App. 2004). In doing so, the State must prove both that (1) the defendant in the present case and the one convicted in the prior case are the same person, and (2) there was a prior conviction. *State v. Nash*, 143 Ariz. 392, 403, 694 P.2d 222, 233 (1985). In the absence of the admission of a defendant, the State may prove a prior conviction with extrinsic evidence, such as a certified copy of a judgment of conviction or minute entry, expert comparison of a fingerprint card with a fingerprint on the sentencing minute entry, testimony of witnesses, or photographs of the defendant. *See, e.g., id.*

¶29        Here, the court found that the allegation of the 2012 prior felony conviction was proved through a fingerprint comparison and the other prior convictions were proved through other extrinsic evidence:

> The defense is correct that the fingerprints have only been matched up to the November 2012 disorderly conduct offense to the current fingerprints.

> I think the better practice would be for the State to have done a fingerprint analysis as to all of the four priors. However, I think there's sufficient evidence to conclude . . . that the three other priors are also for [Appellant] and the names and the date of births on all the prior minute entries match [Appellant's acknowledged name and date of birth]. His name is a somewhat unusual name and I think for that reason as well, it's proof . . . .

> In addition, the information is contained in the pen pack Exhibit 2, which lists all of these same offenses as being committed by [Appellant] with the same DOC number. And for all those reasons, it's my conclusion that the prior felonies have been proven as stated on the record.

We find no fundamental, prejudicial error, in the court's determination that the State properly proved the existence of the three prior felony convictions.

¶30        Further, nothing required that Appellant's prior felony convictions be of the same "nature" as his most current felony conviction

for sentencing enhancement purposes. Appellant had two prior felony convictions for the 1997 crimes, and therefore the conviction for the 1998 crime operated as a historical prior felony conviction for enhancement purposes. *See* A.R.S. § 13-105(22)(d) (Supp. 2016). Further, because the conviction for the 2012 crime also qualified as a historical prior felony conviction, Appellant had two historical prior felony convictions, and the trial court correctly determined Appellant was a category three repetitive offender. *See* A.R.S. § 13-703(C) (Supp. 2016). Accordingly, we reject Appellant's argument that the trial court erred in sentencing Appellant as a category three offender under A.R.S. § 13-703(J).

### VIII. *Other Issues*

¶31 We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881; *Clark*, 196 Ariz. at 537, ¶ 30, 2 P.3d at 96. The evidence presented at trial was substantial and supports the verdict. Appellant was represented by counsel at all stages of the proceedings and was given the opportunity to speak at sentencing. The proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

¶32 After filing of this decision, defense counsel's obligations pertaining to Appellant's representation in this appeal have ended. Counsel need do no more than inform Appellant of the status of the appeal and of his future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Appellant has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

### CONCLUSION

¶33 Appellant's conviction and sentence are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA